**Gmail**

Tammy Sharp &lt;tamshar129@gmail.com&gt;

## Sharpe v. Elizabeth City et. al. *** TIME-SENSITIVE SETTLEMENT DEMAND FOR ELIZABETH CITY'S TOTAL INSURANCE POLICY LIMITS *** EXPIRES 8.25.23 at 9:00 AM

1 message

**Micheal L. Littlejohn Jr.** &lt;mll@littlejohn-law.com&gt;  Fri, Aug 11, 2023 at 4:59 PM
To: wmmorgan@embarqmail.com

**FOR FRE/NCGS SETTLEMENT PURPOSES ONLY**
**CONFIDENTIAL COMMUNICATIONS**

Elizabeth City, City Council Members
c/o William H. Morgan, Jr., Esquire
410 E. Main Street
Post Office Box 160
Elizabeth City, NC 27907-0160
Email: wmmorgan@embarqmail.com

League of Municipalities
c/o Michael Pittman
Senior Director of Risk Management Services
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601

City of Elizabeth City
c/o The Honorable Edward Kirk Rivers (via Counsel)
Mayor
512 Magnolia Street
Elizabeth City, NC 27909
Email: krivers@elizabethcitync.gov

City of Elizabeth City
c/o Montre Freeman, JD
City Manager
P. O. Box 347
Elizabeth City, NC
27907-0347
Email: mfreeman@elizabethcitync.gov
mmcclary@elizabethcitync.gov

Re: Tammy G. Sharp v. City of Elizabeth City; Settlement Communication Containing Confidential and Privileged Content Pursuant to Federal Rule of Evidence 408

*** **TIME-SENSITIVE SETTLEMENT DEMAND FOR ELIZABETH CITY'S TOTAL POLICY LIMITS** ***
**(EXPIRES AUGUST 25, 2023, AT 9:00 a.m.)**

To: Mr. Morgan, Mr. Rivers (via Counsel), Mr. Freeman (via Counsel), Mr. Johnson Biggs (via Counsel), Mr. Joseph Peel (via Counsel), Mr. Javis Gibbs (via Counsel), Ms. Rosemarie Whitehurst (via Counsel), Ms. Katherine W. Felton (via Counsel), Mr. Kem Spence (via Counsel), Ms. Barbara Baxter (via Counsel), Mr. Johnnie B. Walton (via Counsel), Elizabeth City Risk Management, League of Municipalities, All City Council, Decision-Makers, All Money Decision-Makers, All Insurance Company Decision-Makers:

  Please share this email with all City Council Members before their public meeting on August 14, 2023, at 7:00 p.m. Additionally, kindly ensure that the League of Municipalities receives this email to confirm relevant coverage. I am writing to inform you that Littlejohn Law, PLLC has been hired to represent Ms. Tammy G. Sharp in relation to her employment with Elizabeth City. Please note that all previous offers, including my client's demand of $512,486 from last year, have been withdrawn. When Elizabeth City's previous counsel, John D. Leidy, declined my client's settlement request on May 18, 2022, it is reasonable to assume that the City acted with the approval of its insurance provider. If this was not the

case, Elizabeth City's failure to notify the League of Municipalities and other insurers about my client's previous demand to settle within policy limits could result in the League of Municipalities denying coverage and leaving the taxpayers responsible for all expenses, attorney fees, and punitive damages. Elizabeth City has left itself and individual supervisors vulnerable to a verdict exceeding the policy limits.

Before filing a Complaint in federal court, Ms. Tammy G. Sharp has given authorization to our firm to offer the League of Municipalities a final chance to resolve the dispute. To facilitate a discussion, we are providing a brief summary of the facts supporting Ms. Sharp's claims. This will help Elizabeth City understand the liability it will face if we are forced to file a Complaint on her behalf. Ms. Sharp, a former employee of Elizabeth City, filed Complaints against the City alleging that she was paid less because of her gender. After her complaints, her working conditions became intolerable, and a reasonable person in her position would have felt compelled to resign. Elizabeth City made it clear that it would never pay Ms. Sharp the same as her male counterparts, reaffirming this every year through September 2021, which compelled Ms. Sharp to resign.

As outlined below, we believe Elizabeth City violated the Equal Pay Act (EPA) when Elizabeth City paid Ms. Tammy G. Sharp less than her male coworkers for performing similar work and for retaliating against her after she complained about the unfair wage gap. Ms. Sharp also has plausible claims under the North Carolina Whistleblower Act. N.C. Gen. Stat. § 126-84 et seq. (§§ 126-84 to 126-89). The City retaliated against Ms. Sharp after she reported violations under the Equal Pay Act, gross mismanagement, a gross waste of monies, and gross abuse of authority.

## Ms. Sharpe's Employment with the Elizabeth City

Ms. Sharp provided Elizabeth City with more than 24 years of exemplary service, beginning in 1997 until she resigned on October 1, 2021. Ms. Sharp has a Bachelor of Science in Accounting along with two years of academic credit toward a future Master of Business Administration degree. Ms. Sharp is also a notary. Ms. Sharp reported to the electric superintendent and excelled in her position, as evidenced by her performance evaluations.

## Elizabeth City Paid Client Less Than Male Colleagues for Performing Similar Work

During the course of her employment, Ms. Sharp learned that Elizabeth City paid her male colleagues substantially more than it paid her for performing similar work. For example, Elizabeth City paid Ms. Sharp an hourly wage that was $51.41 less than it paid to male coworkers for doing the same job. Ms. Sharp performed work that required equal skill, effort, and responsibility under similar working conditions as the work performed by Randy Lassiter, Brian Hall, Walter Matthews, and Garlando Bowe. For example, Brian Hall, Administrative Assistant, received 2% for his notary, yet the City did not pay Ms. Sharp for the same even though she was also a notary.

Ms. Sharp had a specialized role at the City's Electric Department, where she managed it as a de facto manager while other employees performed fieldwork. Every Director ratified her day-to-day responsibilities, and they tried their best to increase her salary due to her dependability and excellent work. City managers assigned Ms. Sharp to manage Load Management and Meter Readers concurrently, which essentially tripled her workload. However, her salary was not increased significantly, except for an isolated across-the-board raise. It's clear that the City underpaid Ms. Sharp for many years.

In 2018, despite being sent to school for a Project Management Workshop Course by the former Electric Superintendent, Ms. Sharp's title remained unchanged due to the City Manager's refusal. However, in 2021, Elizabeth City created a Project Manager position for Randy Lassiter without the approval of the City Council and placed him in the Electric Department for administrative purposes only. While he is an employee of the Public Utilities Department, his pay was taken from the Electric Department's budget, despite funds being available to change Ms. Sharp's title and pay. This suggests discriminatory motives on the part of Elizabeth City. The creation of the illegal role of Project Manager for Randy Lassiter was retaliatory in nature, resulting from complaints made by Ms. Sharp and others regarding equal pay. The City Council did not approve such actions, as outlined in the EC Personnel Policy Manual II, Recruitment and Appointment Procedures Section 6.0.

*All positions are subject to budget review and approval each year by the City Council and all employees' work and conduct must meet the City's standards) of performance and behavior. Therefore, reference regular positions or employment should not be construed as a contractor's right to perpetual funding or employment.*

The City had money in the Electric Department for Ms. Sharp but chose to retaliate and deny her a pay raise and title change. We do not believe that the pay disparity between what Elizabeth City paid Ms. Sharp and what Elizabeth City paid a male coworker was the result of any legitimate factor—like seniority, merit, productivity, or a factor other than gender—because Rich Olson acknowledged and verified my client's concerns in a written letter. Moreover, in September 2021, Doris Walton told Jason Value that Ms. Sharp's workload was too much for any one person to be

responsible for and that if they were not a director, they should not be making more money than Ms. Sharp. Dorris also told Jenny Young the same. Jason's only response was that all the directors before him tried and were unsuccessful.

## Risk of Award In Excess of Policy Limits

It's important to note that the Fourth Circuit has established a specific method for evaluating whether wages are equal, which involves considering the underlying wage rate for each form of compensation received by employees, rather than just looking at total compensation. This was determined in the case of *Sempowich v. Tactile Sys. Tech., Inc.*, 2021 U.S. App. LEXIS 35820, at *21-22 (4th Cir. December 3, 2021). Based on this and other legal factors, we are considering filing a lawsuit under the Equal Pay Act, which provides a more favorable path to trial than a Title VII case. It's worth noting that courts tend to heavily scrutinize employer defendants in EPA cases during the summary judgment phase, which is when a court can decide the outcome of a case without a trial. This is different from other employment cases, where summary judgment typically goes in favor of corporate defendants. However, when it comes to EPA cases, the law is heavily weighted in favor of employees.

Under the Equal Pay Act, courts must award double damages unless an employer can provide evidence that their gender pay gap was unintentional. Let's consider a hypothetical situation where there is a pay gap of $50,000 annually, and the company has no good faith defense. In that case, the employee can claim that amount going back three years, which amounts to $150,000. If the employee wins the case, the amount typically doubles to $300,000, which totals $450,000.

The Equal Pay Act also prohibits retaliation. This creates a significant risk for Elizabeth City and the insurance companies because Ms. Sharp may be able to seek punitive damages on an EPA retaliation claim. Ms. Sharp had informed Catherine Felton (HR Director) and Monte McClary (HR Director) that it was unfair that every man in her department received raises while she did not.

## Settlement Demand for Total Policy Limits

After conducting an investigation, it has become evident that Elizabeth City violated the EPA by paying Ms. Sharp less than her male colleagues for the same work. Ms. Sharp is determined to seek justice for this violation, and we will use all available resources and legal means to ensure that she receives fair treatment and compensation. We are presenting this settlement demand for the total policy limits, which covers all potential claims against Elizabeth City and individual supervisors. Please accept this as a *CLEAR AND UNEQUIVOCAL SETTLEMENT DEMAND FOR THE TOTAL POLICY LIMITS* covering all potential claims by Ms. Sharpe against Elizabeth City and individual supervisors. We aim for Ms. Sharp to receive compensation for her regular back pay, overtime back pay, and other damages, which currently exceed $1,024,972; however, she will settle now for the total amount of the insurance policy limits. This demand is expressly conditioned on Elizabeth City providing copies of all applicable policy limits and consent from underinsured carriers providing coverage for these claims. This demand will expire at 9:00 a.m. on August 25, 2023. We kindly ask that the insurance company set reserves at $2,500,000 for this case.

If one or more policyholders need to provide consent for the acceptance of this settlement demand, they should be informed that refusal to give consent means the insurance company will not pay any amount beyond the policy limits in the event of a verdict or judgment. Therefore, it is important to demand immediate payment of the settlement to avoid any risks. To prevent the insurance company from using lack of consent as an excuse for not settling, we recommend sending an email, letter, or phone call to the claims representative. In the message, you should advise them to state the following: "Please settle this case immediately for the total policy limits. City Council gives consent to settle and protect Elizabeth City from the risk of a judgement exceeding my policy limits."

## Preservation Obligations

I trust that you and your team at Elizabeth City will handle this letter with the utmost discretion to ensure that Ms. Sharp's decision to seek legal representation does not result in any harm or unfair treatment. It is important to remind you that Elizabeth City bears the responsibility of preserving all relevant documents associated with this matter. If you have not already done so, please take immediate action to preserve any material, including emails, instant messages, voicemails, and other communications related to Ms. Sharp's employment with Elizabeth City, regardless of whether they are in electronic or paper form. This necessitates implementing the following measures:

· Hold in abeyance any existing document retention and/or destruction policies or practices or any other actions that would result in the deletion of any material
· Stop the automatic deletion of emails and other electronic data
· Stop the recycling or reuse of computer backup tapes
· Secure and preserve all recorded telephone conversations and email correspondence of the other decision-makers responsible for the circumstances of my clients' employment
· Maintain all electronic data in a reasonably accessible form, including ceasing any automatic archiving to backup

tapes
- Secure and preserve all computer or electronic hardware, including all hard drives, laptops, cell phones, or any other similar equipment and device.

**Conclusion**

I am presenting this time-sensitive settlement opportunity to protect the interests of hard-working tax-paying citizens in Elizabeth City while also ensuring the City is aware of the potential risks. I believe those who prioritize Elizabeth City's interests will accept this settlement demand. We are confident that further investigation will reveal additional evidence to support Ms. Sharp's claims.

If needed, please do not hesitate to call me at 980.287.9618. I eagerly await Elizabeth City's response.

Sincerely,
/s/ Micheal L. Littlejohn Jr.




### Micheal L. Littlejohn Jr.
Managing Attorney, Littlejohn Law, PLLC

Office: 704.459.5040 | Mobile: 980-287-9618 | Fax: 704-625-9396

littlejohn-law.com | mll@littlejohn-law.com

227 W. Fourth Street Ste. B-113 Charlotte North Carolina 28202

Confidentiality Notice: The information contained in this e-mail message is intended only for the recipient's personal and confidential use (s) named above. This message may be an attorney-client communication and, as such, is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this communication in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. Please notify the sender immediately and delete the original message if you have received this communication in error.

**4 attachments**

- 📄 **Memorandum from Freeman.pdf**
  729K

- 📄 **Katherine Felton, Human ResourcesDirector Memorandum 2016.pdf**
  507K

- 📄 **Rule 408 Settlement Communications - PROTECTED DOCUMENTS.pdf**
  9192K

- 📄 **FRE 408 SETTLEMENT DISCUSSIONS ONLY - PROTECTED 2020 MATERIALS.pdf**
  5914K